**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Missie Lewis, ) | No. CV 10-2387-PHX-JAT |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| State of Arizona, ) | |
| Defendant. ) | |

Pending before the Court is Defendant State of Arizona's Motion for Partial Dismissal of Plaintiff's Second Amended Complaint. (Dkt. 60.) The motion to dismiss has been fully briefed, and the Court now rules as follows.

## I. BACKGROUND

Plaintiff Missie Lewis was employed by the Arizona Department of Corrections as a Criminal Special Investigator at Lewis Prison. (Dkt. 58 or "Compl." ¶ 2.) According to Plaintiff, she was the only black female officer employed by the Arizona Department of Corrections. (*Id.* ¶ 29.)

Based on the allegations in the Second Amended Complaint, Plaintiff applied for the Criminal Special Investigator position in October 2008, and her application was screened by William Blackmer. (*Id.* ¶¶ 16–17.) Plaintiff alleges that Blackmer demanded that Plaintiff have a sexual relationship with him in return for consideration of her employment

application, and Plaintiff submitted to Blackmer's demand. (*Id.* ¶¶ 18–19.) Blackmer forwarded Plaintiff's employment application to the Regional Director of Criminal Investigations, and Plaintiff was hired as a special investigator on April 7, 2008. (*Id.* ¶¶ 19–20.)

According to Plaintiff's allegations, she was denied training opportunities that her male colleagues received, and Plaintiff's supervisors regularly conducted informal meetings with males in the Criminal Investigations Unit. (*Id.* ¶¶ 22–23.) As a result, Plaintiff allegedly was not informed of the criminal investigations discussed during these meetings. (*Id.* ¶ 24.) Plaintiff alleges that she was assigned lower-level investigations, despite her experience, and that male employees were given priority investigation assignments. (*Id.* ¶ 27.)

In the Second Amended Complaint, Plaintiff alleges that while employed with Defendant, Plaintiff was constantly subjected to comments from her male colleagues and inmates about her breasts. (*Id.* ¶ 36.) Plaintiff also alleges that she was harassed about her manner of dressing by her colleagues. (*Id.* ¶ 37.) According to Plaintiff, her supervisor Robert Williams wrote false and defamatory information in her employment file. (*Id.* ¶ 56.) Plaintiff alleges that she was not informed of the complaint in her employment file until she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 25, 57.)

Plaintiff further alleges that she notified the regional director of the Criminal Investigations Unit on various occasions that she believed her superiors treated Plaintiff's male colleagues differently from her. (*Id.* ¶ 41.) Plaintiff alleges that Defendant failed to address the racial comments made by other employees, and failed to remedy the differential treatment Plaintiff received as compared to her male colleagues. (*Id.* ¶ 45.) Despite being notified of the alleged harassment, Plaintiff contends that her supervisors did not remedy or attempt to remedy the situation. (*Id.* ¶¶ 46–47.) According to Plaintiff, her supervisors also denied her request to transfer to another prison facility. (*Id.* ¶ 46.) Plaintiff submitted her resignation from employment with Defendant in January 2010. (*Id.* ¶ 50.)

On March 16, 2010, Plaintiff filed a complaint with the EEOC (*id.* ¶ 7), which she amended on July 15, 2010 (Dkt. 60-1, Ex. B) (collectively, the "EEOC charge"). In the EEOC charge, Plaintiff states that she believes she has been discriminated against because of her sex and her race. (*Id.*) Plaintiff's amended EEOC charge describes an incident at a potluck in which a female colleague allegedly behaved in a threatening and racist manner toward Plaintiff. (Dkt. 60-1, Ex. B.) Plaintiff describes her work environment as hostile, and states that she was wrongfully accused of things. (*Id.*) According to the EEOC charge, Plaintiff complained on several occasions to her supervisor, but "nothing was ever done," and she "felt compelled to resign because [she] couldn't take the harassment anymore." (*Id.*) Plaintiff received a right-to-sue letter from the EEOC on September 29, 2010 (Dkt. 60 ¶ 9), and filed her original complaint in this action on November 5, 2010 (Dkt. 1).

On March 25, 2011, Plaintiff amended her complaint for a second time (Dkt. 58), and on April 13, 2011, Defendant filed an answer to the Second Amended Complaint and the pending motion for partial dismissal (Dkt. 59, 60). Plaintiff asserts two causes of action against Defendant in the Second Amended Complaint: Count One for racial and sexual discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 (Dkt. 58 ¶¶ 29–51); and Count Two for negligent hiring and supervision (*id.* ¶¶ 52–61). Plaintiff seeks compensatory and punitive damages in an amount to be determined by a jury. (*Id.* at p. 7.)

## II. ANALYSIS

Defendant's partial motion to dismiss seeks dismissal of Plaintiff's negligent hiring and supervision claim, Plaintiff's allegations relating to the conduct of Blackmer and comments about her breasts, and Plaintiff's request for punitive damages.

### A. Negligent Hiring and Supervision Claim

Defendant argues that Count Two of Plaintiff's Second Amended Complaint must be dismissed, because Arizona's workers' compensation scheme provides the exclusive remedy for a tort action brought against an employer. *See* A.R.S. § 23-1022(A). Plaintiff responds that she may assert a tort claim for negligent hiring and supervision against her former

employer, if the injury was caused by wilful misconduct. Plaintiff contends that because Count Two arises out of Defendant's lack of supervision of the wilful misconduct of Defendant's employees, Arizona's workers' compensation scheme does not bar Plaintiff's claim. Defendant replies that Plaintiff has not alleged wilful misconduct, nor has she alleged facts that would amount to wilful misconduct. The Court agrees.

Arizona's workers' compensation scheme provides, in relevant part:

> The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee *is the exclusive remedy* against the employer or any co-employee acting in the scope of his employment . . . *except that if the injury is caused by the employer's wilful misconduct*, or in the case of a co-employee by the co-employee's wilful misconduct, and the act causing the injury is the personal act of the employer, or in the case of a co-employee the personal act of the co-employee, . . . and the act indicates a wilful disregard of the life, limb or bodily safety of employees, the injured employee may either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the wilful misconduct.

A.R.S. § 23-1022(A) (emphasis added); *see Gamez v. Brush Wellman, Inc.*, 34 P.3d 375, 378 (Ariz. Ct. App. 2001) ("It is well settled that work-related injury claims are generally redressed exclusively under Arizona's workers' compensation scheme.") (citing A.R.S. § 23-1022(A))*; Irvin Investors, Inc. v. Superior Court*, 800 P.2d 979, 981–82 (Ariz. Ct. App. 1990) (holding that the plaintiff's negligence claims against her former employer were barred by Arizona's workers' compensation law, because "workers' compensation is the only remedy for this injury") (citing A.R.S. §§ 23-906, -1022). "[P]ursuant to the holding in *Irvin Investors*, Arizona law precludes an employee from bringing a tort action based on negligent hiring and negligent retention against their employer." *Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1131 (D. Ariz. 2003) (reconciling the holdings in *Irvin Investors*, and *Ford v. Revlon, Inc.*, 734 P.2d 580 (Ariz. 1987)).

Defendant does not dispute that Arizona's exclusive remedy provisions of its workers' compensation scheme do not apply when the employee's injury is caused by the employer's "wilful misconduct." Wilful misconduct is defined as "an act done knowingly and purposely with the direct object of injuring another." A.R.S. § 23-1022(B). But, as the Arizona cases have consistently held for decades, and as *Mosakowski* demonstrates, "Arizona courts are

reluctant to find that employers have acted with wilful misconduct." 329 F. Supp. 2d at 1130. Plaintiff's negligence-based cause of action does not require Plaintiff to plead that Defendant acted wilfully, and Count Two of the Second Amended Complaint does not contain any allegations of Defendant's wilfulness. Rather, Plaintiff alleges that "[t]he State failed to supervise its employees," and that Plaintiff was harmed as a result of "the State's failure to supervise and/or negligently hire [employees]." (Dkt. 58 ¶¶ 60–61.) Plaintiff has not alleged that Defendant acted wilfully sufficient to avoid the exclusive remedy provisions of Arizona's workers' compensation statute.

Plaintiff's negligent supervision and hiring claim is asserted against Defendant, not against Blackmer, Williams or any other supervisor or employee. Plaintiff argues in her response that even though she has not alleged that Defendant acted wilfully, she has alleged that Defendant was negligent in supervising employees who acted wilfully. (Dkt. 62 at p. 3) ("Plaintiff's injury and claim of Negligent Hiring and Supervision arises out of the lack of supervision by the State and wilful misconduct of employee Blackmer . . . . The State failed to supervise its employee Robert Williams when he intentionally and wilfully wrote false and defamatory information."). The culpability at issue in Count Two of the Second Amended Complaint is that of Defendant, not that of Defendant's employees. Therefore, even if Blackmer, Williams, or any other employee acted wilfully when they allegedly harassed Plaintiff, Plaintiff's claim for negligent supervision and hiring against Defendant does not come under the wilful misconduct exception of Arizona's workers' compensation statute. *Accord Rosen v. Cmty. Educ. Ctrs., Inc.*, No. CV 10-0584-PHX-JFM, 2010 WL 3981200, at *4 (D. Ariz. Oct. 8, 2010).

Based on the foregoing, Count Two of the Second Amended Complaint for negligent supervision and hiring must be dismissed.

**B.**  **Exhaustion of Administrative Remedies**

With respect to Count One of the Second Amended Complaint for Title VII

violations,[1] Defendant argues that the Court lacks subject matter jurisdiction with respect to Plaintiff's claims against Blackmer and Plaintiff's claims concerning harassing comments about her breasts, because Plaintiff failed to exhaust her EEOC administrative remedies. Plaintiff responds that her harassment claims regarding Blackmer, and the continued gender bias evidenced by the comments about her breasts were reasonably related to the EEOC charge, and are properly before the Court.

Title VII requires a plaintiff to file a charge of discrimination with the EEOC within 300 days of the discriminatory conduct.[2] 42 U.S.C. § 2000e-5(e). Neither party disputes that a plaintiff must file a claim with the EEOC before initiating a lawsuit. *See Stache v. Int'l Union of Bricklayers & Allied Craftsmen*, 852 F.2d 1231, 1233 (9th Cir. 1988). "[E]xhaustion of administrative remedies is not jurisdictional but is merely a condition precedent to suit which a defendant may waive or be estopped from asserting." *Id.* (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

"The scope of a civil action alleging [employment] discrimination is limited by the charge filed with the EEOC." *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386 (9th Cir. 1990). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green v. L.A. County Superintendent of Sch.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984)). "Where claims are not so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated." *Brown*, 732 F.2d at 730.

---

[1] "When analyzing § 1981 claims, we apply 'the same legal principles as those applicable in a Title VII disparate treatment case.'" *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007)).

[2] Because Arizona has a state agency, the Arizona Civil Rights Division, to enforce a law prohibiting employment discrimination, the 300-day limit, as opposed to the 180-day limit, in Title VII applies. *See* 42 U.S.C. § 2000e-5(e)(1).

The factors a district court may consider in determining whether the new claim is reasonably related to the allegations contained in the EEOC charge include "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, . . . the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

### 1. Claims Regarding Blackmer

Defendant argues that Plaintiff has failed to administratively exhaust her claims against Blackmer, because neither Plaintiff's original EEOC charge, nor her amended EEOC charge contain any reference to the allegations involving Blackmer's conduct during the hiring process. Plaintiff acknowledges that her claims regarding Blackmer's alleged sexual misconduct and abuse of authority are not contained in the EEOC charge. (Dkt. 62 at p. 4.) However, Plaintiff argues the quid pro quo pre-employment harassment allegations are part of the series of separate acts that make up Plaintiff's hostile work environment claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)).

Although Plaintiff correctly notes that for the purpose of timely filing, she need only file a charge within 300 days of any act that is part of the hostile work environment, *id.* at 118, Plaintiff's allegations concerning Blackmer do not constitute "component acts of the hostile work environment," *id.* at 117. Rather, Plaintiff's allegation of the quid pro quo pre-employment harassment constitutes a separate actionable offense that must be administratively exhausted and timely filed. In order to prevail on a hostile work environment claim, Plaintiff must show that her "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Plaintiff's allegations relating to Blackmer's conduct occurred before Plaintiff

was an employee in the Criminal Investigation Unit, where the allegations of hostile work environment transpired. Plaintiff does not allege that Blackmer continued to sexually harass Plaintiff after she was hired by Defendant. Instead, the allegations concerning Blackmer constitute an isolated instance, unrelated to, and distinct from, the harassment that allegedly persisted in the Criminal Investigation Unit. Accordingly, Plaintiff's allegations of Blackmer's alleged harassment constituted a discrete act. Because Plaintiff's allegations concerning Blackmer's conduct was not described in the EEOC charge, the alleged quid pro quo pre-employment harassment must be reasonably related to the allegations in the EEOC charge, and filed within the 300-day time limit in order to survive dismissal. For the reasons that follow, Plaintiff's claims regarding Blackmer's conduct fail on both grounds.

First, applying the factors set forth in *B.K.B.*, 276 F.3d at 1100, the Court finds that Plaintiff's allegations concerning Blackmer do not reasonably relate to the allegations set forth in the EEOC charge, and, therefore, should have been included separately in the EEOC charge. Plaintiff's hostile work environment claim arises in connection with the actions of Plaintiff's coworkers and supervisors while she was employed as a criminal investigator. The quid pro quo pre-employment harassment clearly occurred prior to Plaintiff's employment, and the alleged perpetrator, Blackmer, was not involved in any of the allegations of harassment described in Plaintiff's EEOC charge. Based on the EEOC charge, the EEOC could not be expected to investigate the events occurring outside Plaintiff's employment in the Criminal Investigations Unit, and Defendant would not be on notice of Plaintiff's allegations concerning Blackmer. The Court cannot consider allegations beyond the scope of the EEOC charge. *See Albano*, 912 F.2d at 386. Therefore, Plaintiff's failure to set forth Blackmer's alleged conduct in an EEOC charge is fatal to Plaintiff's claims before the Court regarding that conduct.

Second, even if Plaintiff had properly set forth her allegations against Blackmer in the EEOC charge, her charge was untimely. As noted above, an EEOC charge must be filed within 300 days of the occurrence of the discriminatory conduct alleged by the plaintiff. 42 U.S.C. § 2000e-5(e)(1). Plaintiff's original EEOC charge was filed on March 16, 2010 (Dkt.

60-1, Ex. A), which is more than 700 days after the date Plaintiff was hired by Defendant on April 7, 2008 (Dkt. 58 ¶ 20). Plaintiff's allegations concerning Blackmer's conduct is well outside the 300-day time limit for bringing an EEOC charge. Therefore, even if Plaintiff had properly set forth her allegations of quid pro quo pre-employment harassment in her EEOC charge, Plaintiff's claim would be untimely.

   *2. Claims Concerning Comments on Plaintiff's Physical Appearance*

Defendant briefly argues in the motion to dismiss that Plaintiff's failure to include her allegations concerning comments allegedly made by male colleagues and inmates about her breasts in the EEOC charge bars Plaintiff from raising those allegations before the Court. As set forth above, allegations of discrimination not included in Plaintiff's EEOC charge cannot be considered by the Court, unless the new claims are "like or reasonably related to" the allegations in the EEOC charge. *B.K.B.*, 276 F.3d at 1100. The Court must construe the EEOC charge "with utmost liberality" in favor of Plaintiff. *Id.*

In her EEOC charge, Plaintiff stated that her discrimination claim was based on race and sex discrimination. Plaintiff states that she was the only female criminal investigator, and she alleges that the work environment became hostile. According to the EEOC charge, she complained on several occasions to her supervisors. (Dkt. 60-1, Ex. B.) Although none of the instances of harassment described in the EEOC charge concern comments made by Plaintiff's male colleagues and inmates about her breasts, the alleged comments occurred while Plaintiff was employed by Defendant, relate to her allegations of sexual harassment, and would likely be discovered in connection with her allegations of a hostile work environment. The Court finds the allegations concerning these comments are sufficiently "like or reasonably related" to the allegations in the EEOC charge to give the EEOC an opportunity to investigate Plaintiff's charge of discrimination, and to provide Defendant with notice of the allegations of a hostile work environment, without going outside the ambit of the EEOC charge. *B.K.B.*, 276 F.3d at 1099.

Based on the foregoing, the Court will not dismiss Plaintiff's allegations in the Complaint relating to comments by male colleagues and inmates about her breasts. (Doc.

58 ¶¶ 36, 47.)

**C. Punitive Damages**

Defendant also moves to dismiss Plaintiff's request for punitive damages on the grounds that punitive damages are not a Title VII remedy available against Defendant. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than a government*, government agency or political subdivision).") (emphasis added). Plaintiff does not dispute Defendant's contention that Plaintiff is not entitled to punitive damages under 42 U.S.C. § 1981a, and withdraws her claim. (Dkt. 62 at p. 5.) Therefore, the Court will grant Defendant's motion to dismiss with respect to this issue.

**III. CONCLUSION**

For the reasons set forth above, the Court will grant Defendant's motion to dismiss in part with respect to Count Two of the Second Amended Complaint, Plaintiff's allegations relating to quid pro quo pre-employment sexual harassment, and Plaintiff's request for punitive damages. However, the Court will deny Defendant's motion to dismiss in part with respect to Plaintiff's allegations concerning the comments of her male colleagues and inmates about her breasts.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (Dkt. 60) is **GRANTED** in part and **DENIED** in part in accordance with this Order.

DATED this 22nd day of August, 2011.

James A. Teilborg
United States District Judge